1  PATRICK K. O'BRIEN, ESQ. (SBN 167957)
   CAITLIN M. PHAIR, ESQ. (SBN 306685)
2  O'BRIEN LAW, P.C.
   755 Baywood Drive, Suite 185
3  Petaluma, California 94954
   Telephone:    (707) 789-6500
4  Facsimile:     (707) 789-6520
   Email:          patrick@pobrienlaw.com
5
   Attorneys for Plaintiff
6  THE SUMMERS GROUP, INC.

7                 **UNITED STATES DISTRICT COURT**

8          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 9  THE SUMMERS GROUP, INC.; AND BRO BIZ, LLC, | **Case No.** |
| 10 | |
| | **PLAINTIFF'S COMPLAINT FOR:** |
| 11              Plaintiffs, | 1.  **VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT** |
| 12      v. | 2.  **COMMON LAW FRAUD** |
| 13 JEFFREY A. RINDE, an individual; CKR LAW, LLP, a California limited liability | 3.  **AIDING AND ABETTING COMMON LAW FRAUD (DAN POLICY & AULT DEFENDANTS)** |
| 14 partnership; STRAIGHTLINE CAPITAL, LLC, a Minnesota limited liability company; AULT CAPITAL, LLC, a | 4.  **AIDING AND ABETTING COMMON LAW FRAUD (RINDE DEFENDANTS)** |
| 15 Florida limited liability company; DAVID E. AULT, an individual; DAN POLICY, | 5.  **NEGLIGENT MISREPRESENTATION** |
| 16 an individual; DONALD HIRSCH, an | 6.  **BREACH OF CONTRACT** |
| individual, EUWANA CAPITAL LLC; | 7.  **RESCISSION** |
| 17 RICK SIEGEL; and DOES 1 through 100, inclusive, | 8.  **CONSTRUCTIVE TRUST** |
| 18 | 9.  **UNJUST ENRICHMENT** |
| | 10. **MONEY HAD AND RECEIVED** |
| 19              Defendants. | 11. **ACCOUNTING** |
| 20 | 12. **CIVIL THEFT** |
| | 13. **AIDING AND ABETTING CIVIL THEFT (DAN POLICY & AULT DEFENDANTS)** |
| 21 | 14. **AIDING AND ABETTING CIVIL THEFT (RINDE DEFENDANTS)** |
| 22 | 15. **CONVERSION** |
| 23 | 16. **FRAUD IN THE INDUCEMENT** |
| | 17. **BREACH OF FIDUCIARY DUTY (DAN POLICY)** |
| 24 | 18. **BREACH OF FIDUCIARY DUTY (AULT AND RINDE DEFENDANTS)** |
| 25 | 19. **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (DAN POLICY & AULT DEFENDANTS)** |
| 26 | 20. **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (RINDE DEFENDANTS)** |
| 27 | 21. **VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200 DEMAND FOR TRIAL BY JURY** |
| 28 | |

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

COMES NOW, Plaintiffs The Summers Group, Inc. and Bro Biz, LLC, ("Plaintiffs"), for their Complaint against Defendants Jeffrey A. Rinde, an individual; CKR Law, LLP, a California limited liability partnership; Straightline Capital, LLC, a Minnesota limited liability company; Ault Capital, LLC, a Florida limited liability company; David E. Ault, an individual; Dan Policy, and individual; and DOES 1 through 100, inclusive (collectively, "Defendants"), allege as follows:

## I.  PARTIES

1.       Plaintiff, The Summers Group, Inc. is and was, at all times relevant herein, a California corporation with its principal place of business located in St. Helena, California. Plaintiff's business includes the acquisition and development of real estate within California.

2.       Plaintiff, Bro Biz, LLC, is and was, at all times relevant herein, a California limited liability company, with its principal place of business in St. Helena, California.

3.       Upon information and belief, Defendant Jeffrey A. Rinde ("Rinde") is and was, at all times relevant herein, an individual and a resident of the State of New York.  Upon information and belief, Rinde is the managing partner of CKR Law, LLP.  Upon information and belief, Rinde is the sole authorized signatory on the CKR Law, LLP attorney trust account held at Signature Bank alleged herein and, as such, has sole authority to instruct Signature Bank to transfer funds out of the said account.  As alleged in Paragraph 16 below, upon information and belief, Rinde is the alter ego of CKR Law, LLP.

4.       Upon information and belief, Defendant CKR Law, LLP ("CKR Law") is and was, at all times relevant herein, a New York limited liability partnership organized under New York law. Upon information and belief, at the times relevant herein, CKR Law had offices throughout the State of California, including without limitation in San Diego, Los Angeles, Irvine and San Francisco, California.  Accordingly, upon information and belief, CKR Law has done, and does,

business in the State of California, including at all times relevant herein and with regard to the transactions alleged herein.

5. Rinde and CKR Law are hereinbelow collectively referred to as the "Rinde Defendants".

6. Upon information and belief, Defendant Straightline Capital, LLC ("Straightline Capital") is and, at all times relevant herein, was a Minnesota limited liability company with its principal place of business located in Roseville, Minnesota.

7. Upon information and belief, Defendant Ault Capital, LLC ("Ault Capital") is and, at all times relevant herein, was a Florida limited liability company with its principal place of business located at 14227 Wild Timber Court, Estero, Florida 33928.

8. Upon information and belief, Defendant David E. Ault ("Ault") is and, at times relevant herein, was an individual, a resident of the State of Florida and the sole member, manager and agent for service of process of Ault Capital. Upon information and belief, prior to residing in the State of Florida, Ault was a resident of the State of Minnesota and, at the relevant times, is and was the sole member, manager and agent for service of process of Straightline Capital. As alleged in Paragraph 16 below, upon information and belief, Ault is the alter ego of Straightline Capital and Ault Capital.

9. Defendant, Donald Hirsch ("Hirsch"), is and was at all times relevant herein an individual over the age of eighteen. On information and belief Plaintiffs allege that Donald Hirsch is and was a resident of the State of Illinois. Upon information and belief, Hirsch is and was at all times relevant herein the owner and manager of Euwana Capital LLC.

10. Upon information and belief, Defendant Euwana Capital LLC ("Euwana"), is a limited liability company with its principal place of business in Hoffman Estates, Illinois. Euwana purports to specialize in providing financing solutions for projects requiring at least $10M (ten million USD). As alleged in Paragraph 16 below, upon information and belief, Hirsch is the alter ego of Euwana.

11.     Defendant, Rick Siegal, is and was at all times relevant herein an individual over the age of eighteen. On information and belief Plaintiffs allege that Rick Siegal is and was, at all times relevant herein a resident of the State of Florida. Siegel is affiliated with Ault, Rinde, and Hirsch and assisted them in promoting the fraudulent loan programs under the various corporate entities and partook in the ill-gotten proceeds.

12.     Straightline, Ault Capital, Ault, Hirsch, Euwana, Siegal and DOES 1-20 are hereinbelow collectively referred to as the "Ault Defendants". Upon information and belief, at the times relevant herein, the Ault Defendants retained "finders" as the Ault Defendants' agents, representatives, affiliates, associates and/or others acting in concert with and/or at the Ault Defendants' behest. The "finders" were retained by one or more of the Ault Defendants to bring potential borrowers to one or more of the Ault Defendants and, in exchange, the Ault Defendants paid those "finders" a fee and/or commission if one or more of the Ault Defendants obtained administrative fees from a prospective borrower in connection with a contemplated loan transaction. Upon information and belief, through the use of "finders", the Ault Defendants have done, and do, business throughout the United States, including in the City and County of Napa, and in the State of California, including at all times relevant herein and with regard to the transactions alleged herein. Upon information and belief, based upon the representations of "finders", the Ault Defendants are and, at the times relevant herein, were primarily in the business of raising capital and obtaining and/or brokering loans for business entities.

13.     Defendant, Dan Policy, is and was at all times relevant herein, an individual over the age of eighteen and resided in Napa County at the time the facts alleged herein occurred.

14.     The true names and capacities, whether individual, corporate, associate or otherwise, of DOES 1 through 100, inclusive, are unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names. Plaintiffs will seek leave of the Court to amend this Complaint when the names and capacities of said Defendants have been ascertained.

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

15.     Plaintiffs are informed and believe, and upon such information and belief allege, that at all times herein mentioned Defendant DOES 1 through 100, inclusive, were the agents, employees, servants, consultants, principals, employers or masters of each of their co-Defendants and each Defendant ratified, adopted or approved the acts or omissions hereinafter set forth of the remaining Defendants, and each and every Defendant. Plaintiffs are further informed and believe, and upon such information and belief allege, that each of these fictitiously named Defendants is responsible in some manner for acts and/or omissions herein alleged.

16.     Plaintiffs are informed and believe, and thereon allege, that certain of the entity Defendants, certain of the individual Defendants and certain of the Doe Defendants, whose precise roles and/or identities are not yet known, and each of them, wholly own and control each other, such that the said individual Defendants are the sole stockholders, officers, directors, members, managers and/or partners of the said entity Defendants; that the said entity Defendants are so controlled by the said individual Defendants that the monies of the entity Defendants and of the individual Defendants are commingled and intermingled; that there is a unity of ownership and interest between them; that the credit of one is used for the credit of the other; that the obligations of the individual Defendants are paid by the entity Defendants; that the entity Defendants were created and capitalized for a sum of money insufficient to meet the reasonable requirements of the entity Defendants; and that, as a result of the foregoing, the said entity Defendants are the instrumentality, conduit, adjunct and alter ego of the said individual Defendants so as to make the entity Defendants, and each of them, the instrumentality, conduit, adjunct and alter ego of the individual Defendants.  The said individual Defendants, at various times and places, have managed and controlled one or more of the said entity Defendants to avoid personal liability and to defraud creditors of the individual Defendants and the entity Defendants and, unless the fiction of the separateness of the individuals from the entities, and from each other, is ignored, great injustice will result, and fraud will be sanctioned, all to the irreparable damage and injury of Plaintiffs, and unless

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

1  judgment in this action includes said individual Defendants and the said entity Defendants,

2  Plaintiffs will be unable to recover and enforce the claims and rights hereinafter referred to.

3  Plaintiffs allege that Defendants, and each of them, are liable hereunder, as alleged herein, and as a

4  consequence of legal relationships, duties and breaches of duties.

5

6                                    **II.  JURISDICTION AND VENUE**

7       17.       Jurisdiction and venue in this Court are proper under 28 U.S.C. § 1332(a), in that the

8  amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and

9  is between citizens of different states.

10      18.       Venue in this judicial Court is proper under 28 U.S.C. § 1391(b)(2), in that a

11  substantial part of the events giving rise to the claims occurred in this judicial district.

12                            **III. FACTS COMMON TO ALL CAUSES OF ACTION**

13      19.       In or about June 2019 Plaintiffs retained Defendant Dan Policy as an independent

14  contractor to provide business consulting services for Plaintiffs' businesses. In exchange for said

15  services, Plaintiffs agreed to pay Dan Policy $5,800 per month. Mr. Policy represented to Plaintiffs that

16  he was a successful financial manager with years of experience at JPMorgan in New York and had now

17  started his own private practice where he had been successful in gaining capital raise for new venture

18  projects. Mr. Policy was also very well known in the St. Helena community and his family was

19  involved with many local philanthropic efforts.

20      20.       Specifically, Mr. Policy was to: create short and long-term business plans to help

21  establish Plaintiffs' companies; assist in all areas of financial investment; create day-to-day operations

22  that would establish profit and loss margins, as well as, operational costs; and broker and secure

23  investors for the expansion and growth of Plaintiffs' businesses.

24      21.       After being retained, Dan Policy advised Plaintiffs that in order to take their businesses,

25  to the next level, they needed to obtain a significant capital raise, and that he could help assist with

26  securing said funding.

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

22.        In or about August 2019, Plaintiffs were introduced by Defendant, Dan Policy to the Ault Defendants.  Dan  Policy  represented  to  Plaintiffs  that the Ault Defendants could obtain and/or broker a multi-million-dollar loan that Plaintiffs could then use to expand their business.

23.        At or about that time, Dan Policy and the Ault Defendants represented to Plaintiffs: (a) that the contemplated loan transaction could be accomplished by the Ault Defendants; (b) that Plaintiffs' payment of "administrative fees" was necessary to the making of the subject loan; (c) that Plaintiffs deposit with the escrow agent of $860,000 was to be for the contemplated loan transaction; (d) that the deposit with the escrow agent would be safe and secure while held by the escrow agent and would not be released until such time as the escrow agent received certain documentation confirming the completion of the contemplated loan transaction; and (e) that if the contemplated loan was not confirmed, the deposit with the escrow agent would be returned to Plaintiffs.

24.        In reasonable and justifiable reliance on the representations of material fact made by Dan Policy and the Ault Defendants, and in connection with the contemplated loan transaction, on or about September 6, 2019, Ault Capital and Plaintiff entered into a written Memorandum of Understanding ("MOU"). Attached hereto has Exhibit " A " is a true and correct copy of the MOU.  The MOU was executed by Ault on behalf of Ault Capital, and by William Summers on behalf of The Summers Group.  The MOU contemplated a loan from, or arranged and procured by and through, Ault Capital to The Summers Group in the amount of Twenty-Two Million Dollars (US$22,000,000) ("Ault Loan").  By virtue of the MOU, a fiduciary relationship was created between Ault and Ault Capital, on the one hand, and Plaintiff, The Summers Group on the other hand.

25.        In connection with the MOU and the contemplated loan transaction, The Summers Group was presented with an Escrow Agreement (the "Escrow Agreement") to be entered into between The Summers Group, Ault Capital and CKR Law. Attached hereto as Exhibit "B" is a true and correct copy of the Escrow Agreement.

26.       Prior to executing the Escrow Agreement, Plaintiffs visited the website of CKR Law, located at www.ckrlaw.com (the "CKR Website").  At the relevant time, the CKR Website represented that CKR Law was a global law firm with nearly 45 law offices around the world, and that Rinde was its managing partner and an attorney with extensive experience, including without limitation in venture capital and private equity financings, project finance, banking and financial instruments, secured debt transactions, going private transactions, foreign direct investment and corporate law and governance. Based on the said representations made on the CKR Website, together with the representations of the Ault Defendants and Dan Policy, Plaintiffs reasonably and justifiably believed that any escrow funds transferred to CKR Law would be and would remain safe and secure pending documented confirmation of completion of the contemplated loan.

27.       In reasonable and justifiable reliance on the representations of material fact made by CKR Law on the CKR Website, and in further reasonable and justifiable reliance on the representations of material fact made by Dan Policy and the Ault Defendants, Plaintiffs were induced to and, on or about September 9, did enter into the Escrow Agreement with Ault Capital and CKR Law.  The Escrow Agreement was executed by Ault on behalf of Ault Capital; by William Summers on behalf of The Summers Group; and by Rinde on behalf of CKR Law.  By the Escrow Agreement, the Ault Defendants and the Rinde Defendants owed fiduciary duties to Plaintiffs.

28.       By reason of his agency relationship to Plaintiffs, Dan Policy owed fiduciary duties to Plaintiffs.

29.       In reasonable reliance on: (a) the MOU; (b) the Escrow Agreement; (c) the fiduciary relationships between Plaintiffs and Defendants; and (d) Defendants' material representations, all as set forth and alleged above, Plaintiffs were induced to and, on or about September 24, 2019, at the instruction of Dan Policy, did transfer by wire the sum of Twenty Thousand Dollars (US$20,000) to Straightline Capital to cover certain purported "administrative fees" related to the making of the subject loan (the "Administrative Fees").

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

30.     Pursuant to the terms of the Escrow Agreement, CKR Law, acting by and through Rinde, was to serve as the "Escrow Agent" for the escrow contemplated by the Escrow Agreement. The Escrow Agreement required The Summers Group to deposit a total of Eight Hundred Eighty Thousand Dollars (US$880,000) with the Escrow Agent, which deposit was a required condition to fund the contemplated loan transaction.  The Administrative Fees previously transferred to Straightline Capital by Plaintiff, as alleged in Paragraph 21, above, were to be credited towards the deposit. Accordingly, The Summers Group was to transfer a balance of Eight Hundred Sixty Thousand Dollars (US$860,000) (the "Escrow Payment") into CKR Law's attorney trust account held at Signature Bank. The Escrow Payment was to be held in trust by the Rinde Defendants.

31.     In order to secure the necessary funding for the Escrow Payment, Defendant Dan Policy located and secured a third-party lender, Socotra Fund, LLC ("Socotra"). Socotra agreed to lend Plaintiff, Bro Biz, $1,000,000.00, of which $860,000 would go towards the Escrow Payment to complete the transaction with the Ault Defendants for the capital funding ("Socotra Loan" and/or Socotra Loan Transaction"). The remaining $140,000.00 could then go towards business expenses, while Plaintiffs waited for the $22M loan from Ault Capital to be funded. Based on guidance and assurances from Defendant, Dan Policy, Plaintiffs used these additional funds towards a down payment on a building that was to be used for cannabis cultivation and extraction for the business. Since the Ault Loan never funded, Plaintiffs ended-up losing $175,000 that was used as a down payment towards acquisition of this additional property. Dan Policy advised and reassured Plaintiffs that the Socotra Loan was necessary in order to secure the additional capital funding and to take their business empire to the next level. Dan Policy further reassured Plaintiffs that they would be able to repay the Socotra Loan once the $22M loan from the Ault Defendants was received.

32.     But for the assurances made by Defendant, Dan Policy, Plaintiffs would not have proceeded with executing the Socotra Loan documents.

33.     At all times relevant herein, and, in pertinent part, based on the MOU and the Escrow Agreement, and the fiduciary relationships created thereby between Plaintiffs and

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

Defendants, Plaintiffs reasonably relied upon the material representations made by Defendants, and each of them, regarding, *inter alia:* (a) the viability of the contemplated loan transaction; (b) the necessity of transfer of the Escrow Payment to obtain the contemplated loan; and (c) the safety and security of the Escrow Payment after its transfer to CKR Law's attorney trust account held at Signature Bank pending documented confirmation of completion of the contemplated loan.

34.     In reasonable reliance on: (a) the MOU; (b) the Escrow Agreement; (c) the fiduciary relationships between Plaintiffs and Defendants; and (d) Defendants' material representations, all as set forth and alleged above, Plaintiffs were induced to and, on or about October 2, 2019, did transfer by wire the Escrow Payment to CKR Law's attorney trust account held at Signature Bank.

35.     Paragraph 4(a) of the Escrow Agreement provides: "The Escrow Agent shall release the Escrow Payment (other than the Admin Fee) to the BI provider[1] pursuant to its instructions within two (2) international banking days of receipt by the Escrow Agent of: (i) a copy of the SWIFT MT760 with 'Answer Back' from A-Cap's [Ault Capital's] designated bank, confirming the issuance and successful transmission of the BI; and (ii) a copy of A-Cap's commitment from a third party to monetize the BI and fund the Loan [term loan to The Summers Group in the amount of $22,000,000 US Dollars], which agreement provides committed funding sufficient to pay the first disbursement and subsequent disbursements up to the Loan Amount over a ten-month period."

36.     Paragraph 4(b) of the Escrow Agreement provides: "Upon notice from Company [The Summers Group] that A-Cap [Ault Capital] has failed to deliver the BI by SWIFT MT760 to A-Cap's designated bank within two (2) international banking days of payment of the Escrow Payment, the Escrow Agent shall, if not previously released, return the Escrow Payment to Company within two (2) international banking day of receipt of such notice. An 'international banking day' means a day on which banks in New York and London are open for business."

---

[1] The term "BI" is defined in the Escrow Agreement as "Bank Instrument". The term "BI provider" is not defined in the Escrow Agreement.

37.     Paragraph 4(c) of the Escrow Agreement provides: "Upon receipt of written notice from the Company and A-Cap by the Escrow Agent that the IA that the Company and A-Cap executed has been terminated, or the IA [Investment Agreement to be entered into between The Summers Group and Ault Capital] proposed terms have expired, the Escrow Agent shall return, if not previously released, the Escrow Payment to the Company, exclusive of any bank charges in connection with the Admin Fee, within two (2) international banking days of receipt of such notice."

38.     Thus, unless CKR Law, as the "Escrow Agent", received both: (i) a copy of the SWIFT MT760 with 'Answer Back' from Ault Capital's designated bank, confirming the issuance and successful transmission of the Bank Instrument; and (ii) a copy of Ault Capital's commitment from a third party to monetize the Bank Instrument and fund the term loan to The Summers Group in the amount of $22,000,000 US Dollars, **CKR Law was obligated to return the Escrow Payment to The Summers Group** within two international banking days of receipt of: (a) notice of Ault Capital's failure to deliver the Bank Instrument by SWIFT MT760 to Ault Capital's designated bank within two international banking days of payment of the Escrow Payment; or (b) notice that the Investment Agreement had been terminated, or that the Investment Agreement's proposed terms had expired.

39.     CKR Law never received either: (i) a copy of the SWIFT MT760 with 'Answer Back' from Ault Capital's designated bank, confirming the issuance and successful transmission of the Bank Instrument; or (ii) a copy of Ault Capital's commitment from a third party to monetize the Bank Instrument and fund the term loan to The Summers Group in the amount of $22,000,000 US Dollars. Nevertheless, upon information and belief, on or about October 4, 2019, the Rinde Defendants released the Escrow Payment, unbeknownst to Plaintiffs.

40.     The Escrow Payment was released without notice to The Summers Group by any of Defendants. To the contrary, Plaintiffs, were repeatedly assured by Dan Policy that the Escrow Payment remained in CKR Law's attorney trust account, and that the loan was in process. In late

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

January of 2020, after several weeks without the loan being funded, and receiving multiple reasons and excuses from Defendants why funding was delayed, Plaintiffs engaged counsel, and only then learned, through counsel, that the Escrow Payment had been released from CKR Law's attorney trust account nearly three months earlier.

41.     Upon learning that the Escrow Payment had been released in contravention of the terms of the Escrow Agreement and Defendants' representations to Plaintiffs, Plaintiffs, through counsel, demanded that Defendants immediately produce both: (i) a copy of the SWIFT MT760 with 'Answer Back' from Ault Capital's designated bank, confirming the issuance and successful transmission of the Bank Instrument; and (ii) a copy of Ault Capital's commitment from a third party to monetize the Bank Instrument and fund the term loan to The Summers Group in the amount of $22,000,000 US Dollars.  Plaintiffs, through counsel, further demanded that, if the said documents were not produced immediately, the Escrow Payment and the Administrative Fees be returned to Plaintiffs immediately. Plaintiffs, through counsel, further demanded that Defendants identify the Bank Instrument provider and the third party that would monetize the Bank Instrument and fund the term loan to The Summers Group.

42.     Instead of producing the documents demanded by Plaintiffs, returning the Escrow Payment and the Administrative Fees to Plaintiffs, and providing the identity of the third parties demanded by Plaintiff, Defendants engaged in a series of acts designed to delay and/or avoid compliance with Plaintiffs demands.  By way of example and not limitation, Rinde and Ault first informed Plaintiff that they purportedly needed a Non-Disclosure Agreement ("NDA") signed by Plaintiffs before Defendants could release the names of the BI Provider or BI Monetizer or any information to Plaintiffs.  After the requested NDA was signed by Plaintiffs and returned to Defendants, Defendants then claimed that they purportedly needed consent from the Bank Instrument provider and Bank Instrument monetizer before Defendants could release any information to Plaintiffs.  Upon information and belief, no such consent is or was ever in fact required.

1

2   43.     As part of these delay tactics, Ault also proffered to Plaintiffs a form of release

3   agreement containing terms that were both highly unfavorable to Plaintiffs and facially ambiguous;

4   moreover, the said form of release agreement failed to set forth a date certain, or even a time

5   period, within which the Escrow Payment and the Administrative Fees would be returned to

6   Plaintiffs.  When Plaintiffs sent Ault a revised form of release agreement, which set forth a specific

7   time period within which the Escrow Payment and the Administrative Fees would be returned to

8   Plaintiffs, Ault, at Rinde's direction, failed and refused to sign and return the document to Plaintiffs.

9   44.     After several more days of similar delay tactics, and having not received the

10  documents, information or return of the Escrow Payment and the Administrative Fees demanded,

11  on February 10, 2020, Plaintiffs, through counsel, contacted Rinde by telephone in Hong Kong.

12  During that call, when asked where the Escrow Payment was sent, Rinde at first claimed he was not

13  sure but thought the funds were sent to "either London or Dubai."  When pressed for the name of

14  the alleged Bank Instrument provider, Rinde gave the name "Anderson International Investments"

15  based in Nevis or the UAE.  Plaintiffs' counsel demanded Rinde produce documents evidencing

16  the same, in particular the outgoing bank wire confirmation showing where, when and to whom the

17  Escrow Payment was sent.

18  45.     Two days later, on February 12, 2020, Rinde sent Plaintiffs' counsel two

19  documents: (1) a document entitled "Joint Participation Agreement" between Ault Capital and

20  Anderson Investments International, LLC, dated October 3, 2019 (one day after Plaintiffs

21  transferred the Escrow Payment to CKR Law's attorney trust account); and (2) a document

22  appearing to be a wire confirmation, the print of which was so small as to be illegible, even when

23  expanded.  After demand was made to provide a clearer, legible version of the second document,

24  Rinde sent Plaintiffs' counsel a copy which was somewhat more legible, although still partly

25  undecipherable.  The document was entitled "Answer Back Page Confirmation System" which

26  shows the term "destination" followed by "Hong Kong"  and appears to bear a date of October 4,

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

2019.  Thus, based on the documents provided by Rinde to Plaintiffs' counsel, it appears that the Escrow Payment was released to an account located in Hong Kong within two days of Plaintiffs' transfer of the Escrow Payment to CKR Law's attorney trust account.  Upon information and belief, the offshore account(s) to which the Escrow Payment was released is owned and/or controlled by one or more of Defendants and/or Defendants' agents, representatives, affiliates, associates and/or others acting in concert with and/or at the behest of one or more of Defendants.

46.     The conditions precedent to the release of the Escrow Payment were never met, and the loan contemplated by the transaction documents never funded.  Nevertheless, Defendants released the Escrow Payment within 48 hours of its transfer to CKR Law's attorney trust account.  Defendants failed to timely disclose this fact to Plaintiffs and instead, for nearly three months, Defendants repeatedly, and falsely, represented to Plaintiffs (through Plaintiffs' agent and representative, Dan Policy) that the loan was being processed, that the Escrow Payment remained safe and secure with CKR Law, and that the Escrow Payment would be promptly returned upon Plaintiffs' demand.

47.     For several weeks Plaintiffs made multiple verbal and written demands to Defendants for return to Plaintiffs of the Administrative Fees and Escrow Payment, all to no avail. Plaintiffs also demanded that Dan Policy return all consulting fees paid to him by Plaintiffs, but to no avail.  Most recently, Plaintiff delivered to all Defendants, except Dan Policy, by both email and certified receipted mail, a written demand that the Administrative Fees and Escrow Payment be immediately returned to Plaintiffs, which written demand included a notice that a lawsuit would be filed against Defendants, and each of them, if the Administrative Fees and Escrow Payment were not returned by a specified date certain.  That written demand went unanswered, leaving Plaintiffs no option but to file suit.  As of the date of the filing of this Complaint, Defendants have failed and refused, and continue to fail and refuse, to return the Administrative Fees, consulting fees,  and Escrow Payment to Plaintiffs.

48.     Upon information and belief, in or prior to the Fall of 2019, Defendants, and each of them, agreed and conspired to commit the wrongful acts alleged above, all to Plaintiffs' harm and detriment.  Upon information and belief, at such time, Defendants, and each of them: (a) were

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

aware and had knowledge that each of the other Defendants planned to commit the said wrongful acts; (b) agreed with each of the other Defendants and intended that the said wrongful acts be committed; and (c) cooperated to that end by committing acts in furtherance thereof.

49.     Upon information and belief, Defendants, and each of them, and parties associated with them, have each been defendant parties to legal actions alleging various fraudulent activities and conduct, including without limitation: (i) a pending lawsuit in New York against Ault for an alleged loan scam similar to the matters alleged herein; (ii) a lawsuit that resulted in disciplinary action and fines by the SEC against Rick Siegel for a telephone solicitation scheme that a federal judge described as a "scam designed to deceive and defraud unsophisticated investors"; (iii) a malpractice lawsuit against Rinde and a CKR Law partner by clients alleging" flagrant malpractice" and concealment of conflicted relationships designed to "generate and protect their secret profits in a penny stock scam by defrauding [their clients]"; (iv) lawsuits against Rinde and CKR Law by former law partners in New York and California, for contractual fraud and breach of contract for inducing lawyers to join CKR Law and then failing to pay distributions, among other related claims; and (v) a lawsuit filed in 2016 against CKR Law, Rinde and Straightline Capital filed by Steve O'Neill in Mariposa County Superior Court (Phoenix, AZ).  In summary, Defendants, and each of them, have in several other instances allegedly devised, developed and materially participated in a variety of fraudulent schemes designed to defraud innocent third parties, including Plaintiffs herein.

50.     Based upon recently obtained information and belief, the Rinde Defendants have multiple lawsuits filed against them by former law partners, clients and third parties alleging fraud, breach of contract, and numerous related claims, and multiple publications have reported that CKR Law is in financial trouble and has failed to pay partners, and that many partners have left CKR Law as result.  Further, upon information and belief, many of CKR Law's claimed office locations throughout the world simply do not exist and have never exist, rather the representation of multiple

offices was used to create an appearance of legitimacy and transactional sophistication.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### (Against All Defendants)

51.     Plaintiffs hereby incorporate by this reference Paragraphs 1 through 46 of this Complaint as though the same were set forth in full herein.

52.     At all times relevant herein, Defendants, and each of them, were "persons" as that term is defined in 18 U.S.C. § 1961(3) and as used in 18 U.S.C. § 1962.  The corporate and entity Defendants engaged in a pattern of racketeering activity through persons and legal entities beyond their control.

53.     At all times relevant herein, Defendants constituted an association in fact and therefore are an "enterprise" as that term is defined in 18 U.S.C. § 1961(4) and as used in 18 U.S.C. § 1962 (hereinafter, the "Enterprise").  At all times relevant herein, the Enterprise had continuity of structure and personnel, a common or shared purpose and an ascertainable structure distinct from that inherent in the pattern of racketeering activity.  Further, the Enterprise was created, existed as an ongoing association engaged in or affecting interstate commerce, and had an ascertainable structure apart from the pattern of racketeering activity alleged herein.  The members of the Enterprise were linked together by more than their participation in the same pattern of racketeering activity alleged herein.  In addition to those Defendants named herein, the Enterprise included the activities of "finders" and other third parties who promoted the Enterprise to Plaintiffs.

54.     At all times relevant herein, Defendants engaged in or affected interstate commerce by transacting business in numerous states and across state lines.

55.     Each of the Defendants was associated with or employed by the Enterprise, and each of the Defendants aided and abetted and/or conspired to, and did as part of that employment or association, conduct or participate in the conduct of the affairs of the Enterprise by engaging in a

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

pattern of racketeering activity.  Each of the Defendants operated or managed the Enterprise itself by conducting or participating, directly or indirectly, in the conduct of the Enterprise's affairs.

56.        Each of the Defendants conspired to, and did, derive or receive income from a pattern of racketeering activity, some part of which was used to operate the Enterprise, enabling the Enterprise to defraud Plaintiffs, all as set forth herein.

57.        As a whole, Defendants acted in concert, with specific, well-defined roles, in the Enterprise to achieve the common goal of defrauding participants, such as Plaintiffs, into making monetary transfers such as the Administrative Fees and Escrow Payment, knowing in advance that such monetary transfers would be immediately transferred offshore and beyond the territorial jurisdiction of the United States of America, but remaining within the possession, custody or control of one or more of Defendants, whether directly and/or by and through agents, representatives, affiliates, associates and/or others acting in concert with and/or at their behest.

58.        Defendant Dan Policy, orchestrated the capital raise loan, by supposedly finding a lender (aka the Ault Defendants) and secured a third-party lender in order for Plaintiffs to satisfy the Escrow Payment for the supposed loan from the Ault Defendants. Dan policy also made affirmative material representations regarding the purported legitimacy of the Enterprise.

59.        The Ault Defendants offered to obtain and/or broker a loan and/or raise capital for Plaintiffs' businesses and provided the MOU and made affirmative material representations regarding the purported legitimacy of the Enterprise, all as alleged above.  The Rinde Defendants offered to provide escrow services as part of the contemplated loan transaction and provided the Escrow Agreement and made affirmative material representations regarding the purported legitimacy of the Enterprise, all as alleged above.

60.        After Plaintiffs discovered that the Escrow Payment had been released without authorization and without fulfillment of the conditions precedent required under the Escrow Agreement, Defendants engaged in dilatory tactics intended to, and which did, result in the

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

continuing of the Enterprise scheme.  Upon information and belief, at all relevant times, the Enterprise was a complete fraud inasmuch as Ault Capital never intended to obtain a loan for Plaintiffs' businesses or otherwise perform under the MOU, which MOU, along with the Escrow Agreement, was at all times a ruse to induce Plaintiffs to transfer the Administrative Fees to Straightline Capital and to transfer the Escrow Payment to the CKR Law attorney trust account.

61.     The conduct of Defendants through a pattern of racketeering activity took place over a period of at least six (6) months, were not isolated events and included acts of mail and wire fraud and violations of state law.

62.     Defendants have continuously engaged in criminal activities, including but not limited to mail and wire fraud, as part of their overall scheme for at least six (6) months and, unless enjoined and restrained, will continue to engage in criminal activities, including without limitation depriving Plaintiff of the return of the Administrative Fees and the Escrow Payment, and disposing of and/or distributing the same.

63.     Defendants' pattern of racketeering activity occurred within the relevant time periods outlined in 18 U.S.C. § 1961(5).

64.     Through their operation and management of the enterprise, Defendants, and each of them, have made or distributed, or caused to be made or distributed, communications by United States mail which included misrepresentations of material fact and have made or caused to be made interstate wire transfers as a result of such misrepresentations.

65.     By virtue of the said and similar communications, Defendants have engaged in, and are continuing to engage in, an uninterrupted series of predicate acts of mail and wire fraud that were related to one another in furtherance of the fraudulent schemes.

66.     By conducting or participating, directly or indirectly, in the conduct of the Enterprise through a pattern of racketeering activity, and conspiring to conduct and participate in such racketeering activity, Defendants, and each of them, have violated both 18 U.S.C. § 1962 (c) and 18

U.S.C. § 1962 (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO Act").

67.    As a direct and proximate result of Defendants' racketeering and corrupt conduct, Plaintiffs were injured in their business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Administrative Fees and the Escrow Payment, costs to Plaintiffs business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses.  Plaintiffs damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein, including without limitation all attorneys' fees and costs incurred in connection with the wrongful acts alleged herein.

68.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants jointly and severally, treble damages, as well as Plaintiffs' costs and reasonable attorneys' fees.

<u>**SECOND CLAIM FOR RELIEF**</u>

**COMMON LAW FRAUD**

<u>**(Against All Defendants)**</u>

69.    Plaintiffs hereby incorporate by this reference Paragraphs 1 through 68 of this Complaint as though the same were set forth in full herein.

70.    In order to induce Plaintiffs to enter into the MOU and the Escrow Agreement, and to transfer the Administrative Fees and the Escrow Payment, and with the intent that Plaintiffs rely on their representations, Defendants made certain misrepresentations of material fact and omitted to disclose certain material facts which they had a duty to disclose.

71.    Specifically, Defendants represented to Plaintiff, *inter alia:* (a) that the contemplated loan transaction could be accomplished by Defendants; (b) that transfer of the Administrative Fees and Escrow Payment were necessary to obtain the contemplated loan; and (c) that the Escrow

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

Payment would be safe and secure after its transfer to CKR Law's attorney trust account held at Signature Bank pending documented confirmation of completion of the contemplated loan.

72.      Moreover, Defendants failed to disclose that the Escrow Payment would be released within 48 hours of its transfer to CKR Law even though the conditions precedent to the release of the Escrow Payment were never met, and the loan contemplated by the transaction documents was never funded.

73.      Each of the foregoing material representations of fact was false when it was made, and each of the omitted material facts were facts which Defendants had a duty to disclose to Plaintiffs.

74.      Defendants, and each of them, knew that their own material representations, and the material representations of each of the other Defendants, were false or were made with reckless disregard as to the truth or falsity thereof, in that they knew they had no basis in fact for making the material representations, or intentionally failed to disclose material facts.

75.      Plaintiffs reasonably and justifiably relied on Defendants' representations, to Plaintiffs' detriment and harm by, *inter alia,* entering into the Socotra Loan transaction (for which Plaintiffs are still obligated and do continue to make payments on), executing the MOU and Escrow Agreement and transferring the Administrative Fees to Straightline Capital and transferring the Escrow Payment to the CKR Law attorney trust account.  Had Plaintiffs known the true facts, Plaintiffs would not have executed the MOU or the Escrow Agreement, nor would Plaintiffs have transferred the Administrative Fees to Straightline Capital or transferred the Escrow Payment to the CKR Law attorney trust account.

76.      As a direct and proximate result of Defendants' fraud, Plaintiffs were injured in their business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses.

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein, including without limitation all attorneys' fees and costs incurred in connection with the wrongful acts alleged herein.

77.     In doing the things herein alleged, Defendants, and each of them, acted willfully, fraudulently, oppressively, maliciously, and with a conscious disregard of the rights of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages in an amount to be determined by the trier of fact.

**THIRD CLAIM FOR RELIEF**
**AIDING AND ABETTING COMMON LAW FRAUD**
**(Against the Dan Policy and Ault Defendants)**

78.     Plaintiffs hereby incorporate by this reference Paragraphs 1 through 77 of this Complaint as though the same were set forth in full herein.

79.     In the alternative, Dan Policy and the Ault Defendants, and each of them, aided, abetted and otherwise assisted in the primary fraudulent conduct of the Rinde Defendants alleged above.

80.     The Rinde Defendants would have been incapable of perpetuating their fraud on Plaintiffs but for the substantial assistance and encouragement of Dan Policy the Ault Defendants.

81.     Dan Policy and the Ault Defendants knew that the material representations of the Rinde Defendants were false or were made with reckless disregard as to the truth or falsity thereof, in that the Rinde Defendants knew they had no basis in fact for making the material representations, or intentionally failed to disclose material facts.

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

82.     Dan Policy and the Ault Defendants knew that Plaintiffs would, and did, reasonably and justifiably rely on the material representations of the Rinde Defendants, all to Plaintiffs' detriment and harm by, *inter alia,* entering into the Socotra Loan transaction, executing the MOU and Escrow Agreement and transferring the Administrative Fees to Straightline Capital and transferring the Escrow Payment to the CKR Law attorney trust account.

83.     As a direct and proximate result of Dan Policy and the Ault Defendants' aiding and abetting fraud, Plaintiffs were injured in their business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses.  Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein.

84.     In doing the things herein alleged, Dan Policy and the Ault Defendants, and each of them, acted willfully, fraudulently, oppressively, maliciously, and with a conscious disregard of the rights of Plaintiffs.  Accordingly, Plaintiffs are entitled to punitive damages in an amount to be determined by the trier of fact.

## FOURTH CLAIM FOR RELIEF

### AIDING AND ABETTING COMMON LAW FRAUD

### (Against the Rinde Defendants)

85.     Plaintiffs hereby incorporate by this reference Paragraphs 1 through 84 of this Complaint as though the same were set forth in full herein.

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

86.     In the alternative, the Rinde Defendants, and each of them, aided, abetted and otherwise assisted in the primary fraudulent conduct of Dan Policy and the Ault Defendants alleged above.

87.     The Rinde Defendants would have been incapable of perpetuating their fraud on Plaintiffs but for the substantial assistance and encouragement of Dan Policy and the Ault Defendants.

88.     The Rinde Defendants knew that the material representations of Dan Policy and the Ault Defendants were false or were made with reckless disregard as to the truth or falsity thereof, in that Dan Policy and the Ault Defendants knew they had no basis in fact for making the material representations, or intentionally failed to disclose material facts.

85.     The Rinde Defendants knew that Plaintiffs would, and did, reasonably and justifiably rely on the material representations of the Ault Defendants, all to Plaintiffs detriment and harm by, *inter alia,* entering into the Socotra Loan transaction, executing the MOU and Escrow Agreement and transferring the Administrative Fees to Straightline Capital and transferring the Escrow Payment to the CKR Law attorney trust account.

86.     As a direct and proximate result of the Rinde Defendants' aiding and abetting fraud, Plaintiffs were injured in their business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses.  Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein.

PLAINTIFFS COMPLAINT

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

87.     In doing the things herein alleged, the Rinde Defendants, and each of them, acted willfully, fraudulently, oppressively, maliciously, and with a conscious disregard of the rights of Plaintiffs.  Accordingly, Plaintiffs are entitled to punitive damages in an amount to be determined by the trier of fact.

<u>**FIFTH CLAIM FOR RELIEF**</u>

**NEGLIGENT MISREPRESENTATION**

**(Against All Defendants)**

88.     Plaintiffs hereby incorporate by this reference Paragraphs 1 through 87 of this Complaint as though the same were set forth in full herein.

89.     As an alternative to the allegations of intentional misrepresentation of material facts and failure to disclose material facts, Defendants, and each of them, negligently made the material representations alleged herein, in that the said Defendants knew, or should have known, that there were no reasonable grounds for believing the representations were true when made.

90.     Defendants intended that Plaintiffs rely upon the said representations and Plaintiffs did, in fact, rely upon Defendants' representations.

91.      Plaintiffs have been harmed by Plaintiffs' reliance upon Defendants' representations.

92.      Plaintiffs reasonably and justifiably relied on Defendants' representations, to Plaintiffs' detriment and harm by, *inter alia,* entering into the Socotra Loan transaction, executing the MOU and Escrow Agreement and transferring the Administrative Fees to Straightline Capital and transferring the Escrow Payment to the CKR Law attorney trust account.  Had Plaintiffs known the true facts, Plaintiffs would not have: entered into the Socotra Loan transaction, executed the MOU or the Escrow Agreement, nor would

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

Plaintiff have transferred the Administrative Fees to Straightline Capital or transferred the Escrow Payment to the CKR Law attorney trust account.

93.     As a direct and proximate result of Defendants' negligent misrepresentation, Plaintiffs were injured in their business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses. Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein.

**SIXTH CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

**(Against the Ault Defendants and Rinde Defendants)**

94.     Plaintiffs hereby incorporate by this reference Paragraphs 1 to 93 of this Complaint as though the same were set forth in full herein.

95.     Plaintiff, The Summers Group entered into the MOU with Ault Capital and entered into the Escrow Agreement with Ault Capital and CKR Law.

96.     Plaintiff has performed all of its obligations under the MOU and the Escrow Agreement.

97.     Defendants, and each of them, have failed, and continue to fail, to fulfill their obligations under the MOU and the Escrow Agreement, and have breached the provisions thereof by, *inter alia* and without limitation, failing and refusing to return the Escrow Payment and the Administrative Fees to Plaintiff.

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

98.     As a direct and proximate result of Defendants' contractual breaches, Plaintiffs were injured in their business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses. Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein.

## SEVENTH CLAIM FOR RELIEF
### RESCISSION
#### (Against the Ault Defendants & Rinde Defendants)

99.     Plaintiffs hereby incorporate by this reference Paragraphs 1 to 98 of this Complaint as though the same were set forth in full herein.

100.     Plaintiff, The Summers Group entered into the MOU with Ault Capital and entered into the Escrow Agreement with Ault Capital and CKR Law.

101.     Pursuant to California Civil Code § 1689(b)(2), a party to a contract may rescind the contract if the consent of the party rescinding was obtained through fraud, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

102.     Pursuant to contract if the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.

103.     Defendants procured Plaintiff's signature to the MOU and to the Escrow Agreement through fraud, all as alleged and set forth above.  Moreover, the consideration for Plaintiffs obligations under the MOU and the Escrow Agreement failed through the

fault of Defendants.

104.        Accordingly, Plaintiff, The Summers Group is entitled to rescind the MOU and the Escrow Agreement. By service of this Complaint, to the extent notice is required, Plaintiffs hereby give notice of Plaintiffs' rescission of the MOU and Escrow Agreement.

## EIGHTH CLAIM FOR RELIEF
### CONSTRUCTIVE  TRUST
#### (Against All Defendants)

105.        Plaintiffs hereby incorporate by this reference Paragraphs 1 to 104 of this Complaint as though the same were set forth in full herein.

106.        Plaintiffs transferred to Straightline Capital the Administrative Fees and transferred to the CKR Law attorney trust account the Escrow Payment, in the total sum of $880,000.

107.        Defendants wrongfully released the Escrow Payment to one or more offshore accounts, including such account(s) located in Hong Kong.  Upon information and belief, the offshore account(s) to which the Escrow Payment was released is owned and/or controlled by one or more of Defendants and/or Defendants' agents, representatives, affiliates, associates and/or others acting in concert with and/or at the behest of one or more of Defendants.  Accordingly, the Escrow Payment remains within Defendants possession, custody or control.

108.        Defendants obtained the Administrative Fees and the Escrow Payment through the improper, illegal and fraudulent means alleged herein.  Accordingly, Defendants hold the $880,000, and/or the proceeds thereof and/or property acquired thereby, in constructive trust for Plaintiffs and are obligated to return and account for the same.  A constructive trust should be imposed on and against any and all proceeds and/or property acquired or held by Defendants, whether directly or indirectly, with  Plaintiffs' $880,000.

109.        To the extent Defendants intend to dispose of or distribute such proceeds and/or property, such disposal or distribution will cause irreparable harm to Plaintiffs for which there is no

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

remedy at law.

**NINTH CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**

**(Against All Defendants)**

110.      Plaintiffs hereby incorporate by this reference Paragraphs 1 to 109 of this Complaint as though the same were set forth in full herein.

111.      Plaintiffs transferred to Straightline Capital the Administrative Fees and transferred to the CKR Law attorney trust account the Escrow Payment, in the total sum of $880,000.

112.      Plaintiffs also paid "Consulting Fees" to Defendant Dan Policy totaling approximately $40,000.

113.      Defendants were not entitled to the Consulting Fees, Administrative Fees and the Escrow Payment, which Defendants obtained through the improper, illegal, and fraudulent means alleged herein.

114.      Defendants have been unjustly enriched by obtaining the Consulting Fees, Administrative Fees and the Escrow Payment from Plaintiffs through the improper, illegal and fraudulent means alleged herein.

115.      As a direct and proximate result of Defendants' unjust receipt of the Consulting Fees, Administrative Fees and the Escrow Payment, Plaintiffs were injured in their business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Consulting Fees, Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses. Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants'

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

conduct, as alleged herein.

## TENTH CLAIM FOR RELIEF

### MONEY HAD AND RECEIVED

**(Against All Defendants)**

116.        Plaintiffs hereby incorporate by this reference Paragraphs 1 to 115 of this Complaint as though the same were set forth in full herein.

117.        Defendants received money that was intended to be used for the benefit of Plaintiffs, in the total amount of $880,000.

118.        Defendants did not use, and have not used, the money for the benefit of Plaintiffs.

119.        Defendants hold money that, in equity, belongs to Plaintiffs, which Plaintiffs are equitably and legally entitled to recover.

120.        Plaintiffs have demanded the return of the money, however, Defendants, and each of them, have failed and refused, and continue to fail and refuse, to return the money to Plaintiffs.

## ELEVENTH CLAIM FOR RELIEF

### ACCOUNTING

**(Against All Defendants)**

121.        Plaintiffs hereby incorporate by this reference Paragraphs 1 to 120 of this Complaint as though the same were set forth in full herein.

122.        Defendants, and each of them, owe a duty to Plaintiffs to account for the Administrative Fees and Escrow Payment fraudulently obtained from Plaintiffs.

123.        Plaintiffs have demanded the required accounting.

124.        Defendants have failed and refused, and continue to fail and refuse, to comply with Plaintiffs demand for an accounting.

## TWELFTH CLAIM FOR RELIEF

### CIVIL THEFT

**(Against All Defendants)**

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

- 29 -

125.     Plaintiffs hereby incorporate by this reference Paragraphs 1 to 124 of this Complaint as though the same were set forth in full herein.

126.     California Penal Code Section 484(a) provides in pertinent part as follows: Every person who shall feloniously steal ...  the personal property of another ... or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money.. or personal property ...  is guilty of theft…. For the purposes of this section, any false or fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof, and the complaint, information or indictment may charge that the crime was committed on any date during the particular period in question.

127.     California Penal Code Section 496(a) provides in pertinent part as follows: Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year. ...

128.      California Penal Code Section 496(c) provides a civil remedy as follows: Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, if any, costs of suit, and reasonable attorney's fees.

129.      Defendants, and each of them, with an intent to permanently deprive Plaintiffs, fraudulently appropriated money and/or property of Plaintiffs.  Defendants, and each of them, knowingly and designedly, by false or fraudulent representations or pretenses, defrauded Plaintiffs of money and/or property by fraudulently inducing Plaintiffs to enter into the MOU and Escrow Agreement and transfer the Administrative Fees to Straightline Capital and the Escrow Payment to

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

CKR Law.

130.     To date, notwithstanding Plaintiffs' repeated demands, Defendants, and each of them, have failed and refuse, and continue to fail and refuse, to return the Consulting Fees Administrative Fees and Escrow Payment to Plaintiffs.  Defendants' theft and unlawful withholding of Plaintiffs' money and property is continuing in that Defendants have failed and refused to return the Consulting Fees, Administrative Fees and Escrow Payment to Plaintiffs.

131.     Defendants' conduct constitutes theft in violation of California Penal Code Sections 484 and 496 and gives rise to liability under Section 496(c) of the Penal Code.

132.     As a direct and proximate result of Defendants' theft, Plaintiffs were injured in their business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Consulting Fees, Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses.  Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein.  Pursuant to California Penal Code Section 496(c), Plaintiff is entitled to: (a) three times the amount of their actual damages; (b) costs of suit and (c) reasonable attorneys' fees.

133.     In doing the things herein alleged, Defendants, and each of them, acted willfully, fraudulently, oppressively, maliciously, and with a conscious disregard of the rights of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages in an amount to be determined by the trier of fact.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

## THIRTEENTH CLAIM FOR RELIEF

### AIDING AND ABETTING CIVIL THEFT

#### (Against Dan Policy and the Ault Defendants)

134.    Plaintiffs hereby incorporate by this reference Paragraphs 1 to 133 of this Complaint as though the same were set forth in full herein.

135.    In the alternative, Dan Policy and the Ault Defendants aided, abetted and otherwise assisted in the primary civil theft conducted by the Rinde Defendants alleged above.

136.    The Rinde Defendants would have been incapable of perpetuating the civil theft of Plaintiffs' money but for the substantial assistance and encouragement of Dan Policy and the Ault Defendants.

137.    Dan Policy and The Ault Defendants knew that the Rinde Defendants fraudulently appropriated money and/or property of Plaintiffs with the intent to permanently deprive Plaintiffs, by fraudulently inducing Plaintiffs to enter into the MOU and Escrow Agreement and transfer the Administrative Fees to Straightline Capital and the Escrow Payment to CKR Law.

138.    The conduct of Dan Policy and the Ault Defendants constitutes aiding and abetting theft in violation of California Penal Code Sections 484 and 496 and gives rise to liability under Section 496(c) of the Penal Code.

139.    As a direct and proximate result of Dan Policy and the Ault Defendants' aiding and abetting civil theft, Plaintiffs were injured in their business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses.  Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein.  Pursuant to

California Penal Code Section 496(c), Plaintiffs are entitled to: (a) three times the amount of their actual damages; (b) costs of suit and (c) reasonable attorneys' fees.

140.       In doing the things herein alleged, Dan Policy and the Ault Defendants, and each of them, acted willfully, fraudulently, oppressively, maliciously, and with a conscious disregard of the rights of Plaintiffs.  Accordingly, Plaintiffs are entitled to punitive damages in an amount to be determined by the trier of fact.

<u>**FOURTEENTH  CLAIM FOR RELIEF**</u>

**AIDING AND ABETTING CIVIL THEFT**

<u>**(Against the Rinde Defendants)**</u>

141.       Plaintiffs hereby incorporate by this reference Paragraphs 1 to 140 of this Complaint as though the same were set forth in full herein.

142.        In the alternative, the Rinde Defendants aided, abetted and otherwise assisted in the primary civil theft conducted by Dan Policy and the Ault Defendants alleged above.

143.       Dan Policy and The Ault Defendants would have been incapable of perpetuating the civil theft of Plaintiffs' money but for the substantial assistance and encouragement of the Rinde Defendants.

144.        The Rinde Defendants knew that Dan Policy and the Ault Defendants fraudulently appropriated money and/or property of Plaintiffs with the intent to permanently deprive Plaintiffs, by fraudulently inducing Plaintiffs to enter into the MOU and Escrow Agreement and transfer the Administrative Fees to Straightline Capital and the Escrow Payment to CKR Law.

145.       The conduct of the Rinde Defendants constitutes aiding and abetting theft in violation of California Penal Code Sections 484 and 496 and gives rise to liability under Section 496(c) of the Penal Code.

146.       As a direct and proximate result of the Rinde Defendants' aiding and abetting civil theft, Plaintiffs were injured in their business and property and have suffered, and continues to suffer, injuries, including without limitation the loss of the Administrative Fees and the Escrow

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

Payment, costs to Plaintiffs business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses. Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein. Pursuant to California Penal Code Section 496(c), Plaintiff is entitled to: (a) three times the amount of their actual damages; (b) costs of suit and (c) reasonable attorneys' fees.

147.     In doing the things herein alleged, the Rinde Defendants, and each of them, acted willfully, fraudulently, oppressively, maliciously, and with a conscious disregard of the rights of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages in an amount to be determined by the trier of fact.

## FIFTEENTH CLAIM FOR RELIEF
### CONVERSION
#### (Against All Defendants)

148.     Plaintiffs hereby incorporate by this reference Paragraphs 1 to 147 of this Complaint as though the same were set forth in full herein.

149.      Defendants, and each of them, through their fraudulent representations and conduct, as alleged herein, obtained $880,000 of Plaintiffs' money.

150.     Pursuant to a Consulting Agreement, the MOU and the Escrow Agreement, Defendants, and each of them, acted as agents of Plaintiffs and, in such capacity, received the $880,000 of Plaintiffs' money on behalf of Plaintiffs, as principal.

151.     The $880,000 of Plaintiffs' money at issue herein is a specific sum capable of identification.

152.      Plaintiffs have demanded that Defendants, and each of them, account for the

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

$880,000 of Plaintiffs' money, however, Defendants have failed and refused, and continue to fail and refuse, to so account.  Upon information and belief, Defendants, and each of them, have misappropriated, commingled and/or misapplied the $880,000 of Plaintiffs' money at issue herein.

153.    Defendants, and each of them, have wrongfully exercised, and continue to wrongfully exercise, dominion over $880,000 of Plaintiffs money.

154.    As a direct and proximate result of Defendants' conversion, Plaintiffs were injured in its business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses. Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein.

155.    In doing the things herein alleged, Defendants, and each of them, acted willfully, fraudulently, oppressively, maliciously, and with a conscious disregard of the rights of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages in an amount to be determined by the trier of fact.

## SIXTEENTH CLAIM FOR RELIEF

### FRAUD IN THE INDUCEMENT

### (Against All Defendants)

156.    Plaintiffs hereby incorporate by this reference Paragraphs 1 to 155 of this Complaint as though the same were set forth in full herein.

157.    In order to induce Plaintiffs to enter into the MOU and the Escrow Agreement and to transfer the Administrative Fees to Straightline Capital and to transfer the Escrow Payment to CKR

Law, Defendants made certain misrepresentations of material fact and omitted to disclose certain

material facts which they had a duty to disclose.

158.     Defendants' misrepresentations and omissions of material facts were likely to

mislead, and did in fact mislead, Plaintiffs concerning the contemplated loan transaction.

159.     Defendants' misrepresentations and omissions of material facts were made with the

intent to induce, and did in fact induce, Plaintiffs to enter into the MOU and the Escrow Agreement

and to transfer the Administrative Fees to Straightline Capital and to transfer the Escrow Payment

to CKR Law.

160.     Defendants, and each of them, knew that Plaintiffs would rely on the representations

made, and the material facts omitted, regarding the contemplated loan transaction, and Plaintiffs did

so rely.

161.     In light of the circumstances, the representations of material fact made, and the

material facts omitted, were false and fraudulent.

162.     In reasonable and justifiable reliance on the representations of material fact made

regarding the contemplated loan transaction, Plaintiffs agreed to, and did, enter into the Socotra

Loan transaction, the MOU and the Escrow Agreement and transferred the Administrative Fees to

Straightline Capital and transferred the Escrow Payment to CKR Law.

163.     Plaintiff, at the relevant time, was ignorant of the existence of the true material facts

that Defendants omitted and failed to disclose.  Had Plaintiffs been aware of the existence of the

true material facts not disclosed, Plaintiffs would not have entered into the MOU or the Escrow

Agreement, nor would Plaintiffs have transferred the Administrative Fees to Straightline Capital or

transferred the Escrow Payment to CKR Law.

164.     As a direct and proximate result of Defendants' fraud, Plaintiffs were injured in their

business and property and have suffered, and continue to suffer, injuries, including without

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

limitation the loss of the Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses. Plaintiffs damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein.

165.        In doing the things herein alleged, Defendants, and each of them, acted willfully, fraudulently, oppressively, maliciously, and with a conscious disregard of the rights of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages in an amount to be determined by the trier of fact.

### SEVENTEENTH CLAIM FOR RELIEF

### BREACH OF FIDUCIARY DUTY

### (Against Defendant Dan Policy)

166.        Plaintiffs hereby incorporate by this reference Paragraphs 1 to 165 of this Complaint as though the same were set forth in full herein.

167.        By virtue of Dan Policy's relationship to Plaintiffs as an agent, Dan Policy owed fiduciary duties to Plaintiffs.

168.        On information and belief, Dan Policy conspired with the other Defendants to perpetuate the fraud alleged herein and above against Plaintiffs.

169.        In the alternative, Dan Policy failed to act prudently and with reasonable care when attempting to secure and locate the capital raise in that he failed to verify the legitimacy of the lender before advising and inducing Plaintiffs to proceed with the loan transaction with the Ault Defendants. Dan Policy further failed to act with reasonable care when he instructed Plaintiffs to wire the $20,000 to Straightline Capital and the subsequent $860,000 to CKR Law.

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

170.     On information and belief Plaintiffs allege that Defendant Dan Policy also breached his duty of loyalty by receipt of a portion of the funds fraudulently taken by the Defendants.

171.     By engaging in the misconduct and wrongful acts as alleged herein, Defendant, and Dan Policy, breached his fiduciary duties owed to Plaintiffs.

172.     As a direct and proximate result of Defendant's breaches of fiduciary duty, Plaintiffs were injured in their business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Consulting Fees paid to Dan Policy, the loss of the Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses. Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein.

173.     In doing the things herein alleged, Defendants, and each of them, acted willfully, fraudulently, oppressively, maliciously, and with a conscious disregard of the rights of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages in an amount to be determined by the trier of fact.

## EIGHTEENTH CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY
**(Against Ault Defendants & Rinde Defendants)**

174.     Plaintiffs hereby incorporate by this reference Paragraphs 1 to 173 of this Complaint as though the same were set forth in full herein.

175.     By virtue of the Ault Defendants and Rinde Defendans' relationships to Plaintiffs Defendants owed fiduciary duties to Plaintiffs.

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6300

176.    By engaging in the misconduct and wrongful acts as alleged herein, Defendants, and each of them, breached their fiduciary duties owed to Plaintiffs.

177.    As a direct and proximate result of Defendant's breaches of fiduciary duty, Plaintiffs were injured in their business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Consulting Fees paid to Dan Policy, the loss of the Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses. Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein.

178.    In doing the things herein alleged, Defendants, and each of them, acted willfully, fraudulently, oppressively, maliciously, and with a conscious disregard of the rights of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages in an amount to be determined by the trier of fact.

## NINETEENTH CAUSE OF ACTION

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

#### (Against the Ault Defendants)

179.    Plaintiffs hereby incorporate by this reference Paragraphs 1 to 178 of this Complaint as though the same were set forth in full herein.

180.    In the alternative, the Ault Defendants aided, abetted and otherwise assisted in the primary breaches of fiduciary duty of the Rinde Defendants alleged above.

181.    The Ault Defendants acted with the intent of aiding, abetting and otherwise assisting the primary breaches of fiduciary duty engaged in by, and gave substantial assistance

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

and/or encouragement to, the Rinde Defendants.  Upon information and belief, the Ault

Defendants knew of and/or ratified the wrongful conduct of the Rinde Defendants alleged herein.

182.    The conduct of the Ault Defendants was a substantial factor in causing

harm to Plaintiffs.

183.    As a direct and proximate result of the Ault Defendants' aiding and abetting

breaches of fiduciary duty, Plaintiffs were injured in their business and property and have

suffered, and continue to suffer, injuries, including without limitation the loss of the

Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain

the loan contemplated by the transaction alleged, and legal expenses.  Plaintiffs' damages include

without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants,

plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs'

business arising from the failure to obtain the loan contemplated by the transaction alleged, and

other consequential and compensatory damages

184.    In doing the things herein alleged, the Ault Defendants, and each of them, acted

willfully, fraudulently, oppressively, maliciously, and with a conscious disregard of the rights of

Plaintiffs.  Accordingly, Plaintiffs are entitled to punitive damages in an amount to be determined

by the trier of fact.

## TWENTIETH CLAIM FOR RELIEF

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### (Against the Rinde Defendants)

185.    Plaintiffs hereby incorporate by this reference Paragraphs 1 to 184 of this

Complaint as though the same were set forth in full herein.

186.    In the alternative, the Rinde Defendants aided, abetted and otherwise assisted in

the primary breaches of fiduciary duty of the Ault Defendants alleged above.

187.    The Rinde Defendants acted with the intent of aiding, abetting and otherwise

assisting the primary breaches of fiduciary duty engaged in by, and gave substantial

assistance and/or encouragement to, the Ault Defendants.  Upon information and belief, the

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

Rinde Defendants knew of and/or ratified the wrongful conduct of the Ault Defendants alleged herein.

188.     The conduct of the Rinde Defendants was a substantial factor in causing harm to Plaintiffs.

189.      As a direct and proximate result of the Rinde Defendants' aiding and abetting breaches of fiduciary duty, Plaintiffs were injured in their business and property and have suffered, and continue to suffer, injuries, including without limitation the loss of the Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses. Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein.

190.     In doing the things herein alleged, the Rinde Defendants, and each of them, acted willfully, fraudulently, oppressively, maliciously, and with a conscious disregard of the rights of Plaintiffs.  Accordingly, Plaintiffs are entitled to punitive damages in an amount to be determined by the trier of fact.

## TWENTY-FIRST CLAIM FOR RELIEF
### VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200
### (Against All Defendants)

191.     PlaintiffS hereby incorporates by this reference Paragraphs 1 to 190 of this Complaint as though the same were set forth in full herein.

192.     Defendants have engaged in unfair competition and unfair business practices

in violation of California Business and Professions Code Sections 17200 *et seq.* by engaging in activities that are unlawful, unfair and fraudulent, including without limitation the wrongful conduct alleged herein and above, which activities and conduct are likely to deceive members of the public and which constitute the business practices of Defendants, and by which activities and conduct Defendants obtained Plaintiffs' money and/or property

193.      As a direct and proximate result of Defendants' wrongful, unlawful, unfair and fraudulent activities and conduct, Plaintiffs were injured in their business and property and have suffered, and continues to suffer, injuries, including without limitation the loss of the Consulting Fees, the Administrative Fees and the Escrow Payment, costs to Plaintiffs' business due to failure to obtain the loan contemplated by the transaction alleged, and legal expenses.  Plaintiffs' damages include without limitation the $880,000 transferred to the Ault Defendants and the Rinde Defendants, plus pre-judgment interest thereon, as well as additional consequential damages to Plaintiffs' business arising from the failure to obtain the loan contemplated by the transaction alleged, and other consequential and compensatory damages proximately caused by Defendants' conduct, as alleged herein.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues triable in the above action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.   For monetary damages in the amount of $880,000, or more, according to proof;

2.   For additional consequential and compensatory damages, according to proof;

3. For entry of a judgement imposing a constructive trust, for the benefit of Plaintiff, on any and all proceeds and/or property acquired or held by Defendants, whether directly or indirectly, with Plaintiffs $880,000;

4. For an order requiring Defendants, and each of them, to show cause, if any they have, why they should not be enjoined as set forth below, during the pendency of this action;

5. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants, and each of them, as follows:

   a. Prohibiting Defendants, and each of them, from disposing of or distributing any and all proceeds and/or property acquired or held by Defendants, whether directly or indirectly, with Plaintiffs $880,000;

   b. Prohibiting Defendants, and each of them, from instructing, assisting, aiding or abetting any other person or entity in engaging in any of the activities referred to in subparagraph (a) above;

   c. Requiring Defendants, and each of them, to account to Plaintiff for all gain, profit or advantage derived by Defendants, or any of them, for their wrongful acts alleged herein;

6. For punitive damages in the amount to be determined by the trier of fact;

7. For pre-judgement interest on all damages, according to proof;

8. For treble damages pursuant to 18 U.S.C. § 1964(c);

9. For an order compelling Defendants to account to Plaintiff for the Administrative

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

PLAINTIFFS COMPLAINT

1

Fees and Escrow Payment fraudulently obtained from Plaintiff;

2

3

10. For treble damages pursuant to Cal. Penal Code § 496(c);

4

11. For an order declaring the MOU and Escrow Agreement rescinded and for

5

restitution of all consideration given by Plaintiffs to Defendants under or pursuant

6

to the MOU and the Escrow Agreement;

7

12. For attorneys' fees;

8

13. For costs of suit;

9

14. For such other and further relief as the Court deems just and proper.

10

11

12    Dated: January 24, 2023                    O'BRIEN LAW, P.C.

13

14

15    By: _____
       PATRICK K.  O'BRIEN, ESQ.
16     CAITLIN M. PHAIR, ESQ.
       Attorneys for Plaintiffs, The Summers Group and
17     Bro Biz, LLC

18

19

20

21

22

23

24

25

26

27

28

O'Brien Law, P.C.
755 Baywood Dr., Ste. 185
Petaluma, CA 94954
Tel: (707) 789-6500

EXHIBIT A



**AULT CAPITAL**

*Financing Simplified*

September 6, 2019

The Summers Group
1171 Meadowcreek Circle
Saint Helena, CA 94574

Attention: William Summers, Owner

Mr. Summers,

This letter will confirm that **Ault Capital, LLC** a Florida limited liability company, (and/or its affiliates, agents and assigns) (collectively, "A-Cap") is committed to work on a transaction as further described herein with **The Summers Group** ("Company") with its registered address at 1171 Meadowcreek Circle, Saint Helena, CA 94574, which will include the provision of a term debt investment facility offered by A-Cap, to fund the development, construction and operation of a commercial growing and manufacturing facility for a cannabis business as further described in Exhibit B attached hereto ("Business") on the terms and conditions set out herein, including Exhibit A hereto (the "Proposed Transactions").

**PART ONE—NONBINDING PROVISIONS**

As of the signature date of this letter the parties agree to commence negotiating definitive written agreements providing for the Proposed Transactions and all necessary related documents to be determined and agreed in writing by the parties (the "Definitive Agreements"). The execution of any Definitive Agreements will be subject to agreeing the terms and conditions of such Definitive Agreements which will be based on the terms and conditions set out in Exhibit A and will also be subject to approval by A-Cap's governing body. A-Cap confirms that it is satisfied with the due diligence investigation and findings carried out in regard to The Summers Group and the projects which will be carried out by The Summers Group

1.    BASIC TRANSACTIONS

Based upon the information currently known to A-Cap, which includes the findings of the business, legal and financial due diligence, and subject to all other conditions set forth herein, the execution of Definitive Agreements is expected to be consummated on or before (60) days following receipt of this executed letter.

2.    OTHER TERMS

In the Definitive Agreements, each party will make customary comprehensive representations and warranties to the other, will agree to customary and other covenants to be agreed and will provide customary indemnities and other protections to the other party. The utilization by The Summers Group of the funds that will be made available under the Definitive Agreements will be subject to the delivery of the following conditions:

      (a)  The Summers Group issuing a certificate confirming the truth and accuracy of the representations and warranties of The Summers Group as set forth in the Definitive Agreements;

      (b)  The Summers Group issuing a certificate confirming the absence of pending or threatened litigation, claims, investigations or other matters that materially affect The Summers Group obligations under the Definitive Agreements;

      (c)  The Summers Group will have to perform or comply in all material respects with all agreements required by the Definitive Agreements; and

      (d)  such other reasonable conditions as are customary in transactions of this type.

**PART TWO—BINDING PROVISIONS**

The parties, intending to be legally bound, agree to the following legally enforceable paragraphs of this letter.

3.    ACCESS

During the Exclusivity Period (as defined below), and previous written request by A-Cap with a least (3) three business days, The Summers Group will afford A-Cap and its duly authorized representatives full and free access (at reasonable times) to relevant books, records, documents, data and personnel of The Summers Group related with the Proposed Transactions, subject to confidentiality requirements set forth in Paragraph 5 referred below.

4.    EXCLUSIVE ENGAGEMENT AND DEALING

In consideration of the time, effort and expense incurred to date and anticipated to be incurred by A-Cap in connection with its consideration of the Proposed Transactions, The Summers Group agrees as follows:

      (a)  From and after the date of the signature date of this letter by The Summers Group through

Ault Capital, LLC

and including the date that is (60) sixty days after the date of such execution date (the "Exclusivity Period"), none of The Summers Group or its respective officers, directors, partners, members, shareholders, employees, affiliates, agents, advisors or representatives (collectively, "Representatives") will, directly or indirectly, solicit or entertain offers from, negotiate with or in any manner encourage, discuss, accept, or consider any proposal of, or provide any information to, any person other than A-Cap and its Representatives relating to any single term debt investment to The Summers Group for an amount equivalent to the Investment Facility Amount;

(b) The Summers Group will immediately notify A-Cap regarding any contact between The Summers Group or its Representatives and any other person regarding any such offer or proposal or any related inquiry and, if made in writing, furnish A-Cap a copy thereof.

If The Summers Group or its Representatives should breach this Paragraph 4, The Summers Group agrees to compensate A-Cap for damages incurred as a result of such breach.

5.    CONFIDENTIALITY

The parties hereby agree to maintain the confidentiality of the Proposed Transactions and of this letter, including its purpose, terms, content and existence, as well as all information and data provided by The Summers Group or its Representatives to A-Cap or its Representatives, or by A-Cap or its Representatives to The Summers Group or its Representatives pursuant hereto (collectively, "Confidential Information"). Each of the parties shall use at least the same degree of care to safeguard and to prevent the disclosure, publication, dissemination, destruction, loss or alteration of the other party's Confidential Information as it employs to avoid unauthorized disclosure, publication, dissemination, destruction, loss, or alteration of its own information (or information of its customers) of a similar nature, but in no case less than reasonable care. Neither The Summers Group nor its Representatives on the one hand, nor A-Cap or its Representatives on the other hand, may use any of such Confidential Information for any purpose other than to evaluate, negotiate and perform the Proposed Transactions. Neither The Summers Group nor its respective Representatives on the one hand nor A-Cap or its Representatives on the other hand shall disclose any Confidential Information to any other person without the disclosing party's prior written consent, except to its Representatives who shall have a valid need to know in connection with the purpose of this letter and who are bound by confidentiality obligations to the disclosing party at least as extensive as the provisions of this Paragraph 5. Each party agrees to take all steps reasonably necessary to insure the compliance by all of its Representatives with this provision concerning confidentiality.

Notwithstanding the foregoing, the receiving party or its Representatives may disclose Confidential Information without the disclosing party's prior written consent, and such information shall no longer be deemed Confidential Information for all purpose of this Letter, only to the extent such information: (a) is already demonstrably known to the receiving party or its Representatives as of the date of disclosure hereunder without breach of any confidentiality obligation; (b) is already in possession of the public or demonstrably becomes available to the public other than through the act or omission of the receiving party or any of its Representatives or by beach of any confidentiality obligation; (c) is required to be disclosed under applicable law or governmental order, decree, regulation or rule. In addition, notwithstanding anything else in this letter, The Summers Group may disclose the Proposed

Ault Capital, LLC

Transactions and of this letter, including its purpose, terms, content and existence as well as any related information required in order for The Summers Group to seek additional investment, whether by way of equity, debt or otherwise, or to seek other business arrangements in furtherance of its business.

In the event that the receiving party or any of its Representatives is required by law or governmental order, decree, regulation or rule to disclose any of the Confidential Information, the receiving party agrees to: (i) promptly notify the disclosing party of such requirement; and (ii) reasonably assist the disclosing party in seeking a protective order or other appropriate remedy without being required to become a party to any litigation or incur more than *de minimis* out-of-pocket expenses). In the event that such protective order or other remedy is not obtained, (a) the receiving party or its Representative, as the case may be, may disclose only that portion of the Confidential Information which it is advised by counsel is required to be disclosed, and shall exercise its reasonable efforts to obtain assurance that confidential treatment will be accorded such portion of the Confidential Information, and (b) the receiving party shall not be liable for such disclosure unless such disclosure was caused by or resulted from a previous disclosure by receiving party (or any of its representatives) not permitted by this Letter.

The receiving party acknowledges and agrees that the disclosing party will not have an adequate remedy at law and will be irreparably harmed in the event that any of the provisions of this Paragraph 5 are not performed in accordance with their terms or are otherwise breached. It is accordingly agreed that the disclosing party and its affiliated companies shall be entitled to equitable relief, including any injunction and specific performance, in the event of any breach of the provisions of this Paragraph 5, in addition to all other remedies available to the disclosing party at law or in equity.

The Confidential Information shall remain the property of the disclosing party, and the disclosing party may demand the return or destruction thereof at any time upon giving written notice to the receiving party, within thirty (30) days of receipt of such notice, the receiving party shall, at its option, return, or cause its Representatives to return, or destroy, or cause its Representatives to destroy, all of the Confidential Information (both written and electronic) in its or its Representatives' possession. Notwithstanding anything to the contrary herein, it is understood and agreed that the receiving party may retain one copy of the Confidential Information for archival purposes, which copies shall be subject to the provisions hereof until the same are destroyed. Therefore, this confidentiality provisions shall survive the termination of the Proposed Transaction; provided that the foregoing shall not relieve any party from liability for damages incurred as a result of any breach of Paragraph 5 of this letter.

The obligations of the parties under this Paragraph 5 with respect to any Confidential Information shall continue for a period of five years after the disclosure to the receiving party thereof.

6.    COSTS

Except as otherwise provided herein, The Summers Group on the one hand and A-Cap on the other hand, respectively, will be responsible for and bear all of its/their respective costs and expense (including any broker's or finder's fees and the expense of their representatives) incurred at any time in connection with the preparation, negotiation and execution of this letter and with pursuing or consummating the Proposed Transactions and as referred in Exhibit A attached herein.

Ault Capital, LLC

7.   TERMINATION

Paragraphs 3 through 9 hereof (the "Binding Provisions") will automatically terminate upon the earliest of the following (the "Termination Date"): (i) the last day of the Exclusivity Period; (ii) the execution of the Definitive Agreements by all parties; (iii) the mutual written agreement of A-Cap and The Summers Group Upon termination of the Binding Provisions, the parties will have no further obligations under this letter, except that Paragraph 4 (solely with respect to violations thereof occurring before the date of such termination) and Paragraph 5 and Paragraph 9 will survive such termination and remain in full force and effect.

8.   EFFECT OF LETTER

The provisions of Paragraphs 1 and 2 of this letter and Exhibit A hereto are intended only as an expression of interest on behalf of A-Cap and The Summers Group are not intended to be legally binding on any party and are expressly subject to the negotiation and execution of appropriate Definitive Agreements. In addition, nothing in this letter should be construed as an offer or commitment on the part of A-Cap to submit a definitive proposal or on The Summers Group to accept any definitive proposal.  Except as expressly provided in Paragraphs 3 through 9 (or as expressly provided in any binding written agreement that the parties may enter and agreed in writing into in the future), no past or future action, course of conduct, or failure to act relating to the Proposed Transactions, or relating to the negotiation of the terms of the Proposed Transactions or any Definitive Agreements, will give rise to or serve as a basis for any obligation or other liability on the part of the parties. Without limiting the foregoing, A-Cap and its Representatives shall have no liability to any of The Summers Group and its Representatives if the Proposed Transactions or other transactions contemplated hereby are not consummated for any reason. Furthermore, and without limiting the foregoing, except as otherwise expressly provided for herein, The Summers Group and its Representatives shall have no liability to any of A-Cap and its Representatives if the Proposed Transactions or other transactions contemplated hereby are not consummated for any reason.

9.   MISCELLANEOUS

   (a)   Entire Agreement. The Binding Provisions include any prior memorandum of understanding executed agreements and or addendums, whether written or oral, between the parties with respect to its subject matter and constitute a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter.

   (b)   Modification. This letter may only be amended, supplemented, or otherwise modified by a writing executed by the parties.

   (c)   Governing Law.  This letter and all matters relating to or arising out of the Proposed Transactions and the other transactions contemplated hereby and the rights of the parties (sounding in contract, tort, or otherwise) will be governed by and construed and interpreted under the laws of New York, without regard to conflicts of laws principles that will require the application of any other law.

Ault Capital, LLC

(d)  <u>Waiver of Jury Trial</u>. Each of the parties hereto hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any action, claim, cause of action or suit (in contract, tort or otherwise), inquiry, proceeding or investigation arising out of or based upon this Agreement, the transactions contemplated hereby or relating to the subject matter hereof or thereof. Each of the parties hereto certifies that no representative of any other party has represented, expressly or otherwise, that such other party would not, in the event of any such litigation, seek to enforce the foregoing waiver.

(e)  <u>Counterparts</u>. This letter may be executed in one or more counterparts, each of which will be deemed to be an original copy and all of which, when taken together, will be deemed to constitute one and the same document, and will be effective when counterparts have been signed by each of the parties and delivered to the other parties. A manual signature on this letter whose image shall have been transmitted electronically will constitute an original signature for all purposes. The delivery of copies of this letter, including executed signature pages, by electronic transmission will constitute effective delivery of this letter for all purposes.

If you are in agreement with the foregoing, please sign and return one copy of this letter, which thereupon will constitute our understanding with respect to its subject matter and a binding agreement with respect to the Binding Provisions.

Very truly yours,



By: _____
Name: _____

Agreed to as to the Binding Provisions
on September _6_ , 2019.

**The Summers Group**
By: _____
Name:  William Summers
Title:  CEO

EXHIBIT B

Transaction Code: _____
Lessor Code:
Lessee Code:

## <u>ESCROW AGREEMENT</u>

This Escrow Agreement (the "Agreement"), dated as of September 9th, 2019 is by and among, THE SUMMERS GROUP (the "Company") with an address at 1171 Meadowcreek Circle, Saint Helena, CA 94574 a California corporation, represented by William Summers and Ault Capital, LLC ("A-Cap"), a Florida Limited Liability Company, represented by David Ault, located at 23150 Fashion Drive, Suite 231, Estero, Florida 33928 (A-Cap and Company is herein referred to as the "Escrow Parties"), and CKR Law, LLP (the "Escrow Agent"), a United States law firm with its principal place of business at 1330 Avenue of the Americas New York, New York 10019.

**WHEREAS**, the Company is ready, willing and able to lease a Bank Instrument ("BI") pursuant to an Investment Agreement ("IA"), to be entered into between The Summers Group and Ault Capital together with the execution of this Agreement and the conditions precedent to the issuance thereof;

**WHEREAS**, A-Cap has agreed to procure the BI as detailed in the Memorandum of Understanding dated September _9th_, 2019 entered into by and between the Company and A-Cap (the "MOU").

**WHEREAS**, pursuant to the MOU the Company agreed to place in escrow the amount of **$880,000** US Dollars to be used by A-Cap to obtain the BI and for related costs and expenses (the "Escrow Payment").

**WHEREAS**, A-Cap shall use the BI to fund a term loan to the Company ("Loan") in the amount of $22,000,000 US Dollars on the terms set forth in the MOU ("Loan Amount");

**WHEREAS,** the Escrow Agent has agreed to receive, hold and release the Escrow Payment in accordance with the terms and conditions of this Agreement; and

**WHEREAS**, included in the Escrow Payment is an administration fee (the "Admin Fee") to cover administration, legal fees, banking fees, and any other fees, costs or expenses in connection with this transaction. For clarification purposes only, the Escrow Agent's Fees, Admin Fees, Costs and Expenses in Section 10 of this Agreement shall be paid by A-Cap and Company shall not be responsible for any payments in addition to the Escrow Funds (as defined below).

**NOW, THEREFORE**, in consideration of the premises and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties hereto hereby agree as follows:

1

Company's Initials: WS          A-Cap's Initials:          Escrow Agent Initials: CKR

Transaction Code: _____
Lessor Code:
Lessee Code:

1.    **Establishment of Escrow.** On or prior to two (2) business days following the execution date of this Agreement, the Company shall deliver the Escrow Payment, inclusive of the Admin Fee (together, the "Escrow Funds") to the Escrow Agent to the bank coordinates on <u>Annex A</u>. Following receipt of the Escrow Funds, the Escrow Agent shall promptly confirm receipt of the Escrow Funds to the Escrow Parties.

2.    **Appointment of Agent.** The Escrow Parties appoint and designate the Escrow Agent as their agent to hold in escrow, and to administer the disposition of, the Escrow Funds in accordance with the terms of this Agreement, and the Escrow Agent accepts such appointment.

3.    **Handling of the Escrow Payments.** The Escrow Agent shall hold the Escrow Payment in its IOLA bank account in accordance with its internal policies for the handling of other funds of a similar nature. The Escrow Agent shall be entitled to use the Admin Fee for costs and fees associated with the transaction detailed in the IA and MOU and will be placed in the general operating account and will not be placed in escrow.

4.    **Release of the Escrow Funds**.

      (a)    The Escrow Agent shall release the Escrow Payment (other than the Admin Fee) to the BI provider pursuant to its instructions within two (2) international banking days of receipt by the Escrow Agent of:

              (i)    a copy of the SWIFT MT760 with "Answer Back" from A-Cap's designated bank, confirming the issuance and successful transmission of the BI; and

              (ii)    a copy of A-Cap's commitment from a third party to monetize the BI and fund the Loan, which agreement provides committed funding sufficient to pay the first disbursement and subsequent disbursements up to the Loan Amount over a ten-month period.

      (b)    Upon notice from Company that A-Cap has failed to deliver the BI by SWIFT MT760 to A-Cap's designated bank within two (2) international banking days of payment of the Escrow Payment, the Escrow Agent shall, if not previously released, return the Escrow Payment to Company within two (2) international banking day of receipt of such notice. An "international banking day" means a day on which banks in New York and London are open for business.

      (c)    Upon receipt of written notice from the Company and A-Cap by the Escrow Agent that the IA that the Company and A-Cap executed has been terminated, or the IA proposed terms have expired, the Escrow Agent shall return, if not previously released, the Escrow Payment to the Company, exclusive of any bank charges in connection with the Admin Fee, within two (2) international banking days of receipt of such notice.

      (d)    Notwithstanding anything to the contrary in this Agreement, if at any time, the Escrow Agent receives any other instructions signed by each of the Escrow Parties, or their respective successors or assigns, as to the disbursement of the Escrow Payment or any portion

2

Transaction Code: _____
Lessor Code:
Lessee Code:

thereof, the Escrow Agent shall disburse the Escrow Payment pursuant to such instructions. The Escrow Agent shall have no obligation to follow any directions set forth in any such instructions unless and until the Escrow Agent is satisfied, in its sole discretion that the persons executing said instructions are authorized to do so.

(e)     The Escrow Agent shall promptly disburse the Admin Fee, in its sole discretion, to pay the fees, costs and expenses payable in connection with this transaction in accordance with the terms hereof.

(f)     The Escrow Agent shall have no obligation to release the Escrow Payment in accordance with clauses (a) – (e) of this Section 4 unless and until the Escrow Agent is satisfied, in its sole discretion, with the written evidence and that the person requesting the payment is authorized to do so.

(g)     Delivery of the Escrow Funds to the Escrow Parties shall be to the bank coordinates set forth in <u>Annex A</u> to this Agreement.

(h)     Notwithstanding anything to the contrary in this Agreement, if the initial disbursement of the Loan is not made within sixty days of release of the Escrow Payment ("Initial Closing Period"), or if all the disbursements under the Loan are not made when due under the terms of the Loan, then A-Cap shall promptly reimburse the Company the full Escrow Payment if the initial advance of the Loan is not made within the Initial Closing Period, or that portion of the Escrow Payment that is equivalent to the pro rata portion of the Loan not extended in accordance with its terms.

**5.**     <u>**Responsibilities and Liability of Escrow Agent**</u>.

(a)     <u>**Duties Limited.**</u> The Escrow Agent undertakes to perform only such duties as are expressly set forth in this Agreement. The Escrow Agent's duties shall be determined only with reference to this Agreement and applicable laws and it shall have no implied duties. The Escrow Agent shall not be bound by, deemed to have knowledge of, or have any obligation to make inquiry into or consider, any term or provision of any agreement between any of the Escrow Parties and/or any other third parties or as to which the escrow relationship created by this Agreement relates, including without limitation any documents referenced in this Agreement.

(b)     <u>**Limitations on Liability of Escrow Agent**</u>. Except in cases of the Escrow Agent's bad faith, willful misconduct or gross negligence, the Escrow Agent shall be fully protected (i) in acting in reliance upon any certificate, statement, request, notice, advice, instruction, direction, other agreement or instrument or signature reasonably and in good faith believed by the Escrow Agent to be genuine, (ii) in assuming that any person purporting to give the Escrow Agent any of the foregoing in connection with either this Agreement or the Escrow Agent's duties, has been duly authorized to do so, and (iii) in acting or failing to act in good faith on the advice of any counsel retained by the Escrow Agent. The Escrow Agent shall not be

3

liable for any mistake of fact or law or any error of judgment, or for any act or omission, except as a result of its bad faith, willful misconduct or gross negligence. The Escrow Agent shall not be responsible for any loss incurred upon any action taken under circumstances not constituting bad faith, willful misconduct or gross negligence.

Without limiting the generality of the foregoing, it is agreed that except in case of the Escrow Agent's bad faith, willful misconduct or gross negligence, in no event will the Escrow Agent be liable for any lost profits or other indirect, special, incidental or consequential damages which the parties may incur or experience by reason of having entered into or relied on this Agreement or arising out of or in connection with the Escrow Agent's services, even if the Escrow Agent was advised or otherwise made aware of the possibility of such damages; nor shall the Escrow Agent be liable for acts of God, acts of war, breakdowns or malfunctions of machines or computers, interruptions or malfunctions of communications or power supplies, labor difficulties, actions of public authorities, or any other similar cause or catastrophe beyond the Escrow Agent's reasonable control.

In the event that the Escrow Agent shall be uncertain as to its duties or rights under this Agreement, or shall receive any certificate, statement, request, notice, advice, instruction, direction or other agreement or instrument from any other parties with respect to the Escrow Funds which, in the Escrow Agent's reasonable and good faith opinion, is in conflict with any of the provisions of this Agreement, or shall be advised that a dispute has arisen with respect to the Escrow Funds or any part thereof, the Escrow Agent shall be entitled, without liability to any person except in case of the Escrow Agent's bad faith, willful misconduct or gross negligence, to refrain from taking any action other than to keep safely the Escrow Funds until the Escrow Agent shall be directed otherwise in accordance with joint written instructions from the Escrow Parties or an order of a court with jurisdiction over the Escrow Agent. The Escrow Agent shall be under no duty to institute or defend any legal proceedings, although the Escrow Agent may, in his discretion and at the expense of the Escrow Parties as provided in subsections (c) or (d) immediately below, institute or defend such proceedings.

(c)     **Indemnification of Escrow Agent**. Except in case of the Escrow Agent's bad faith, willful misconduct or gross negligence, the Escrow Parties jointly and severally agree to indemnify the Escrow Agent for, and to hold him harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable and documented legal fees and expenses of attorneys chosen by the Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Escrow Agent of any of the Escrow Agent's duties under this Agreement. Notwithstanding the foregoing, in no event shall the Company's obligations to the Escrow Agent pursuant to this subsection exceed the amount of the Escrow Payment.

(d)     **Authority to Interplead**. The Escrow Parties authorize the Escrow Agent, if the Escrow Agent is threatened with litigation or is sued; to interplead all interested parties in any

4

Transaction Code: _____
Lessor Code:
Lessee Code:

court of competent jurisdiction and to deposit the Escrow Funds, with the clerk of that court. In the event of any dispute under this Agreement, the Escrow Agent shall be entitled to petition a court of competent jurisdiction and shall perform any acts ordered by such court.

6.      **Termination**. This Agreement, except as to the obligations of A-Cap with respect to the provisions of Section 4(h) hereof, and all the obligations of the Escrow Agent under this Agreement shall terminate upon the earliest to occur of the release of the Escrow Funds by the Escrow Agent in accordance with this Agreement or the deposit of the Escrow Funds, by the Escrow Agent in accordance with Section 5(d) hereof.

7.      **Removal of Escrow Agent.** The Escrow Parties shall jointly have the right to terminate the appointment of the Escrow Agent, specifying the date upon which such termination shall take effect. Thereafter, the Escrow Agent shall have no further obligation to the Escrow Parties except to hold the Escrow Funds, as depository and not otherwise. The Escrow Agent shall refrain from taking any action until it shall receive instructions from the Escrow Parties designating the successor escrow agent. Escrow Agent shall deliver the Escrow Funds or any remaining part thereof, to such successor escrow agent in accordance with such instructions and upon receipt of the Escrow Funds or any remaining part thereof, the successor escrow agent shall be bound by all of the provisions of this Agreement.

8.      **Resignation of Escrow Agent**. The Escrow Agent may resign and be discharged from its duties and obligations hereunder at any time by giving no less than ten (10) days' prior written notice of such resignation to the Escrow Parties, specifying the date when such resignation will take effect. Thereafter, the Escrow Agent shall have no further obligation to the Escrow Parties except to hold the Escrow Funds or any remaining part thereof as depository and not otherwise. In the event of such resignation, the Escrow Parties agree that they will jointly appoint a successor escrow agent within ten (10) days of notice of such resignation. The Escrow Agent shall refrain from taking any action until the Escrow Agent shall receive instructions from the Escrow Parties designating the successor escrow agent. The Escrow Agent shall deliver the Escrow Funds, or any remaining part thereof, to such successor escrow agent in accordance with such instructions and upon receipt of the Escrow Funds or any remaining part thereof, the successor escrow agent shall be bound by all of the provisions of this Agreement. However, if at expiration of such ten (10) day period, the Escrow Parties have not designated a successor escrow agent, then the Escrow Agent shall promptly return the Escrow Funds or any remaining part thereof to the Company.

9.      **Survival**. Notwithstanding anything in this Agreement to the contrary, the provisions of Section 5 shall survive any resignation or removal of the Escrow Agent, and any termination of this Agreement.

10.      **Escrow Agent Fees, Costs, and Expenses**. The Escrow Agent shall charge a transaction cost of one half (1/2%) percent of the face value of the BI transaction, which shall be paid by A-Cap, and shall be entitled to immediately pay its expenses which are customary fees, vendors or partners expenses, bank charges, travel expenses, and delivery charges or other out of pocket

5

Company's Initials: WS          A-Cap's Initials: _____          Escrow Agent Initials: C K R

Transaction Code: _____
Lessor Code:
Lessee Code:

expenses incurred in connection with this Agreement. A-Cap, acknowledges its obligation to pay any costs, expenses and other amounts owed to the Escrow Agent pursuant to this Agreement.

**11.**     **Notices**. All notices under this Agreement to be transmitted to the respective parties, shall be in writing and shall be considered to have been duly given or served when personally delivered to any Company parties, or on the first (1st) business day after the date of deposit with an overnight courier for next day delivery, postage paid, or on the third (3rd) business day after deposit in the domestic or local mail service, certified or registered, return receipt requested, postage prepaid, or on the date of telecopy, fax or similar transmission during normal business hours, as evidenced by mechanical confirmation of such telecopy, fax or similar transmission, addressed in all cases to the parties at his or its address set forth below, or to such other address as such parties may designate, provided that notices will be deemed to have been given to the Escrow Agent on the actual date received:

If to Company:

The Summers Group, LLC
1171 Meadowcreek Circle Saint Helena,
CA 94574
Phone: (310) 625-7242
Attention: William Summers

If to A-CAP:

Ault Capital, LLC.
23150 Fashion Drive
Suite 231
Estero, Florida 33928
Phone: (651) 600-4603
Attention: Mr. David Ault

If to the Escrow Agent:

CKR LAW, LLP
1330 Avenue of the Americas,
14th Floor
New York, New York 10019
Phone: (212) 259-7300
Attention: Mr. Jeffrey A. Rinde

6

**Company's Initials:** WS          **A-Cap's Initials:** _(initials)_          **Escrow Agent Initials:** C K R

Any notice, except notice by the Escrow Agent, may be given on behalf of any parties by its counsel or other authorized representative. In all cases the Escrow Agent shall be entitled to rely on a copy or a fax transmission of any document with the same legal effect as if it were the original of such document.

12.    **Modifications; Waiver**. This Agreement may not be altered or modified without the express prior written consent of all of the parties to this Agreement. No course of conduct shall constitute a waiver of any terms or conditions of this Agreement, unless such waiver is specified in writing, and then only to the extent so specified. A waiver of any of the terms and conditions of this Agreement on one occasion shall not constitute a waiver of the other terms of this Agreement, or of such terms and conditions on any other occasion.

13.    **Further Assurances**. If at any time the Escrow Agent shall determine or be advised that any further agreements, assurances or other documents are reasonably necessary or desirable to carry out the provisions of this Agreement and the transactions contemplated by this Agreement, the Escrow Parties shall execute and deliver any and all such agreements or other documents, and do all things reasonably necessary or appropriate to carry out fully the provisions of this Agreement.

14.    **Assignment**. This Agreement shall inure to the benefit of and be binding upon the successors, heirs, personal representatives, and permitted assigns of the parties. This Agreement is freely assignable by the Escrow Parties; provided, however, that no assignment by such parties, or it successors or assigns, shall be effective unless prior written notice of such assignment is given to the other parties, including, without limitation, the Escrow Agent; and provided, further, that any assignee satisfies the Escrow Agent's requirements set forth herein. This Agreement may not be assigned by the Escrow Agent, except that upon prior written notice to the Escrow Parties, the Escrow Agent may assign this Agreement to an affiliated or successor bank or other qualified bank entity.

15.    **Section Headings**. The section headings contained in this Agreement are inserted for purposes of convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

16.    **Governing Law/Disputes**. This Agreement shall be interpreted according to and subject to New York Law. The Escrow Parties agree to do their utmost to ensure that any disputes between them are settled equitably and amicably and where possible without resort to arbitration. In the event of any differences or dispute of whatever nature arising from this Agreement (which shall include any failure to agree on any matter which requires the Escrow Parties' agreement for the purposes of implementation of this Agreement) or any other matter related thereto which cannot be settled by direct negotiation within thirty (30) days after either of the Escrow Parties has notified the other parties in writing of the existence of the dispute, such differences or dispute shall be referred to and finally settled by binding arbitration in City, County and State of New York.

7

Company's Initials: WS          A-Cap's Initials: _____ Escrow Agent Initials: C K R

Transaction Code: ____
Lessor Code:
Lessee Code:

17.    **Waiver of Jury Trial.** EACH OF THE PARTIES HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, CLAIM, CAUSE OF ACTION OR SUIT (IN CONTRACT, TORT OR OTHERWISE), INQUIRY, PROCEEDING OR INVESTIGATION ARISING OUT OF OR BASED UPON THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREBY OR RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF. EACH OF THE PARTIES HERETO CERTIFIES THAT NO REPRESENTATIVE OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF ANY SUCH LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.

18.    **Counterparts and Facsimile Execution.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes (and such signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes).

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

8

Company's Initials: WS        A-Cap's Initials: _[initials]_        Escrow Agent Initials: C K R

Transaction Code: _____
Lessor Code:
Lessee Code:

**THE SUMERS GROUP, LLC**

BY: *William Summers*

NAME: William Summers
TITLE: Principal

**AULT CAPITAL, LLC**

BY:

NAME: David Ault
TITLE: Managing Partner

**CKR LAW, LLP - ESCROW AGENT**

BY:

NAME: Jeffrey A. Rinde
TITLE: Managing Partner

9

Company's Initials: WS          A-Cap's Initials:          Escrow Agent Initials:

Transaction Code: _____
Lessor Code:
Lessee Code:

## ANNEX A

## BANK COORDINATES

## ESCROW AGENT

**Escrow Payment**

| | |
|---|---|
| Bank: | Signature Bank |
| Address: | 485 Madison Avenue, NY, NY 10022 USA |
| Account Name: | CKR LAW LLP Attorney Trust Account |
| Account No.: | 1503214942 |
| Name of Authorized Signatory: | Jeffrey A. Rinde |
| SWIFT Code: | SIGNUS33 |
| Bank Officer Name: | Joan McNulty |
| Bank Officer Title: | Group Director, Senior Vice President, Commercial and Private Banking |
| Telephone: | 646-981-2479 |
| Fax: | 646-560-4246 |
| Email: | jmcnulty@signatureny.com |

## THE SUMMERS GROUP, LLC

| | |
|---|---|
| Bank: | |
| Address: | |
| SWIFT: | |
| Account Name: | |
| Account No.: | |
| Account Signatory: | |
| IBAN CODE: | |
| Bank Officer: | |
| Telephone: | |
| Facsimile: | |
| Bank Officer Email: | |

10

**Company's Initials:**          **A-Cap's Initials:** _[signature]_   **Escrow Agent Initials:** _C K R_